UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

TARA O'CONNOR-ROCHE as Executor of the Estate of PAUL ROCHE III, and Individually,

Petitioner,

-against-

RBC CAPITAL MARKETS, LLC, and CHRISTOPHER RYAN BAYLES,

Respondents.

---------------------------------------------------------------------------x

Index No. 22-cv-1467-LLS

**PETITIONER'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER PETITION TO VACATE AND IN OPPOSITION TO RESPONDENTS' CROSS-MOTION TO CONFIRM**

KRAUS & ZUCHLEWSKI LLP

Robert Kraus, Esq.
Jonathan Sclar, Esq.
60 E 42nd Street
Suite 2534
New York, New York 10165
(212) 869-4646
*Attorneys for Petitioner*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................ iii

**INTRODUCTION** ........................................ 1

**ARGUMENT** ........................................ 3

**I. The Panel manifestly disregarded the law** ........................................ 3

**II. The Award was procured by fraud or misconduct** ........................................ 6

**III. This Court should deny Respondents' request for attorneys' fees** ........................................ 10

**CONCLUSION** ........................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Beljakovic v. Melohn Props. Inc.*, No. 04-cv-3694 (JMF), 2012 WL 5429438 (S.D.N.Y. Nov. 7, 2012) ........ 7

*Century Pac, Inc. v. Hilton Hotels Corp.*, 03 Civ. 8258 (SAS) 2004 U.S. Dist. LEXIS 6904 (S.D.N.Y. April 21, 2004) ........ 6

*Goldfinger v. Lisker*, 68 N.Y.2d 225 (1986) ........ 6

*Karppinen v. Karl Kiefer Machine Co.*, 187 F.2d 32 (2d Cir. 1951) ........ 7

*Odeon Capital Grp., LLC v. Ackerman,* 864 F.3d 191 (2d Cir. 2017 ........ 7

*U.S. v. Schlesinger*, 438 F.Supp.2d 76 (S.D.N.Y. 2006) ........ 9

**Rules**

FINRA Rule 2010 ........ 1, 2, 3, 4, 5, 10

**Regulations**

NY CPLR § 7511(b)(1)(i) ........ 2, 3

**Other Authorities**

FINRA's Arbitration Claim Filing Guide, 3 (January 2017) ........ 4, 10

Tara O'Connor-Roche, individually and as executor for the Estate of Paul Roche III, ("Tara" or "Petitioner") respectfully submits this reply memorandum of law in further support of her petition to vacate and in opposition to the cross-motion to confirm filed by RBC Capital Markets, LLC ("RBC") and Christopher Ryan Bayles (collectively, "Respondents").[1]

**INTRODUCTION**

Hoping to divert attention from the fundamentally flawed, unfair arbitration proceeding, Respondents argue that Petitioner's manifest disregard of the law argument fails because it focuses "this Court on a single theory: that the Panel manifestly disregarded the law in rejecting a purported claim for violation of FINRA Rule 2010." Respondents' Memorandum of Law, at 13 ("Resp. Mem."). But Petitioner's claims were never so limited and Respondents' straw man argument fails. Moreover, even if Petitioner had asserted only a single claim under FINRA Rule 2010, Respondents' argument that the rule does not create a private right of action still fails because the FINRA Dispute Resolution forum properly adjudicates "disputes, claims, and controversies," which is very different than resolving only "private rights of action." FINRA's Arbitration Claim Filing Guide, 3 (January 2017). Respondents cannot avoid the Panel's manifest disregard of the law by mischaracterizing Petitioner's claims as focused solely on FINRA Rule 2010.

Respondents again mischaracterize when they oppose Petitioner's showing of fraud or misconduct in the arbitration proceeding. Respondents' lead argument is two-pronged, built first on the false premise that vacatur is available only when a party engages in misconduct, and second on the implausible claim that Bayles' false testimony was a simple memory failure that

[1] Defined terms in this memorandum shall have the meanings ascribed to them in Petitioner's memorandum of law in Support of her Petition to Vacate the Award ("Pet. Mov. Mem."), except with regard to "FFAP Commitment Agreement" which will hereinafter be referred to as a "Succession Agreement" to be consistent with Respondents' defined terms.

does not constitute misconduct. CPLR § 7511 does not by its terms limit the circumstances under which vacatur is available to misconduct only by a party, nor does it make any sense for it to be so circumscribed. As for the misconduct itself, Bayles' claim that succession agreements were not even in his mind during his time at RBC stretches credulity beyond the bounds of reason considering that: (i) Bayles himself had signed a Succession Agreement (Ex. C to Mov. Mem.); (ii) he had received a substantial revenue stream based on a Succession Agreement signed by another financial advisor, Tara's first husband John O'Connor (Ex. D to Mov. Mem.); (iii) he had admitted to assisting Tara with financial planning (Ex. A at 710:11-14; 712:8-25); (iv) he had been partners with Tara's second husband Paul Roche, who also had signed a Succession Agreement (Ex. E to Mov. Mem.); and (v) RBC regularly advised its financial advisors on the importance of having succession agreements (Ex. F. to Mov. Mem.). As addressed further below, Respondents' other arguments – e.g., that the fraud/misconduct was not material to Tara's claims – fare no better.

RBC grossly distorts Petitioner's claims and the record of the arbitration proceeding in the hopes of diverting attention from the undeniable fact that Bayles and Morgan Stanley each engaged in substantial misconduct that resulted in a grossly unfair proceeding. Morgan Stanley violated the Subpoena requiring the production of two signed Succession Agreements long before the hearing. The signed Succession Agreements are directly relevant to Tara's claims for breach of duty, both at common law and under FINRA Rule 2010, her negligent misrepresentation claims, and Respondents' defenses thereto. Bayles capitalized on Morgan Stanley's withholding by testifying falsely that the agreements did not exist and were not even contemplated by him in twenty years of financial planning. The fact that Bayles' signed Succession Agreement was produced and admitted into evidence during Petitioner's closing

argument cannot undo the substantial prejudice she already suffered. Tara was denied any reasonable opportunity to fairly marshal the evidence and assemble her claims in advance of the hearing, introduce the evidence timely during the hearing and fairly cross-examine Bayles, and make relevant arguments before and during the hearing. The inequity is plain.

Bayles' signed Succession Agreement is material to the claims and defenses at issue in the arbitration proceeding. The very fact that Respondents repeatedly elicited false testimony that Bayles' Succession Agreement did not exist is a tacit admission of its relevance. Without the critical Succession Agreements, Tara was denied any reasonable opportunity to properly prepare for and conduct the hearing and prove Bayles breached his common law duty and Rule 2010 duty. Bayles' signed Succession Agreement is proof that he understood their importance and should have so advised Tara. Since he claims he didn't advise her nor even think about succession agreements, his testimony is an admission that he and RBC breached their duty to Tara. Further, even if one were to assume that the Panel did not credit his testimony – i.e., find that he told Tara that there was a succession agreement in place at RBC, as she testified – then Tara should have prevailed on her negligent misrepresentation claim. Morgan Stanley's failure to comply with the Subpoena and Bayles' false testimony prejudiced Tara's ability to support her claims and to reject Respondents' defenses herein. Their actions constitute fraud or misconduct pursuant to NY CPLR § 7511(b)(1)(i), sufficient to vacate the underlying Award and undo this miscarriage of justice that the arbitration proceeding represents.

## ARGUMENT

### I. The Panel manifestly disregarded the law

Respondents argue at length that the Panel could not have disregarded any law because Petitioner's claims were limited to breach of duty under FINRA Rule 2010 and that Rule does

not confer a private right of action. Resp. Mem. at 13-17. The argument fails for multiple reasons, including at the outset that Petitioner's breach of duty claims were never limited to FINRA Rule 2010. Tara's Amended Statement of Claim very plainly pleads a breach by Respondents of their common law duty of good faith and fair dealing, which is implicit in every contract. Ex. M to Mov. Mem. at ¶¶ 94-99. Tara also alleged a breach of the common law duty in her pre-hearing brief. Ex. 11 to Sullivan Decl. at 4, and at the hearing (Ex. A at 22:25-23:4; 888:9-24; 899:4-10). Nor do Respondents' mischaracterizations of Tara's claims end there for their cross-motion also ignores her claim for negligent misrepresentation, which was asserted in her Amended Statement of Claim (Ex. M to Mov. Mem. at ¶¶ 39-45), repeated in her pre-hearing statement (Ex. 11 to Sullivan Decl. at 4) and pursued at the hearing (Ex. A at 900:6-22; 903:3-11). In short, Respondents' opposition papers set up a false straw man argument when they argue that Tara only asserted claims under FINRA Rule 2010.

Even assuming for purposes of argument that Tara's claims were limited to FINRA Rule 2010, Respondents' argument that the arbitration panel could not have manifestly disregarded the law because no private right of action exists for 2010 claims still fails. The rules in the FINRA dispute resolution forum do not require a "private right of action." Unlike federal or state court, FINRA dispute resolution provides a forum where "[a]ny type of dispute, claim or controversy arising out of business dealings with any FINRA brokerage firm can be resolved in mediation or arbitration." FINRA's Arbitration Claim Filing Guide, 3 (January 2017). Thus, even if Tara's claims were limited only to claims under FINRA Rule 2010 (which of course they were not), she still would have presented a "dispute, claim, or controversy" that was properly before the FINRA forum.

Respondents next argue that Tara "fails to show that the Panel knew FINRA Rule 2010 was at issue in the case." (Resp. Mem. at 15). This argument fails for the same reasons noted above; her claims were not limited to FINRA Rule 2010 and, in any event, the Panel was aware that Tara was pursuing a claim pursuant to FINRA Rule 2010. Tara argued the claims in her pre-hearing brief (Ex. 11 to Sullivan Decl. at 4) and again in her closing argument. Ex. A at 914:4-915:15. In short, the Panel was made aware of each of Tara's claims for common law breach of duty, negligent misrepresentation, and FINRA Rule 2010.[2]

Once Bayles' Succession Agreement was finally produced and admitted in evidence, the arbitration Panel necessarily disregarded the law. There are only two possible conclusions to be drawn by the Panel regarding it and the testimony by Bayles that succession agreements were never in his mind (Ex. A at 742:12-18) and he never told Tara that one was in place at RBC (Ex. A at 805:24-806:4). The Panel could either credit the testimony or reject it. If credited, then Bayles necessarily breached the duty he had assumed to engage in proper financial planning for Tara (Ex. A at 710:11-14; 712:8-25) because his signed Succession Agreement proves that he knew of the importance of succession agreements to a proper financial plan. Accordingly, he should have advised her that she needed one at RBC and he necessarily breached his duty by not doing so. On the other hand, if the Panel rejected Bayles' contention and determined that he had told Tara that she had an agreement in place at RBC, then it necessarily should have found in favor of Tara on her negligent misrepresentation claim. Negligent misrepresentation is well-established, well-defined, was pleaded in Tara's Amended Statement of Claim (Ex. M to Mov. Mem. at ¶¶ 39-45) and was argued at the hearing (Ex. A at 903:3-11). *Century Pac, Inc. v. Hilton*

[2] Respondents' argument that Tara cannot assert a claim pursuant to FINRA Rule 2010 because discovery has already closed (Resp. Mem. at 16) fails under the same reasoning; i.e., Tara is not asserting a claim pursuant to Rule 2010 for the first time.

*Hotels Corp.*, 03 Civ. 8258 (SAS) 2004 U.S. Dist. LEXIS 6904, *22 (S.D.N.Y. April 21, 2004) (internal citation omitted). Respondents' attempt to confirm the award / oppose vacatur by ignoring Petitioner's claims for breach of common law duty and negligent misrepresentation cannot stand.

## II. The Award was procured by fraud or misconduct

### a. The fraud / misconduct was revealed only after the evidentiary portion of the hearing closed.

Respondents argue that Tara is precluded from moving to vacate the Award on the basis of fraud or misconduct because she "was aware of the supposed fraud she now alleges before the award issued, she brought it to the Panel's attention, and the Panel denied her claims." Resp. Mem. at 18. But the fact that Bayles' Succession Agreement was first revealed after the evidentiary portion of the hearing already had closed cannot undo the prejudice that Tara already had suffered, which is the touchstone of the vacatur motion. *See Goldfinger v. Lisker*, 68 N.Y.2d 225, 231 (1986) (emphasizing that "[a]lthough courts generally will not interfere with the judgment of arbitrators, arbitration awards are not to be confirmed without question when there is evidence of misconduct prejudicing the rights of the parties."). Material evidence was withheld and as a direct result Tara was denied a fair opportunity to: (i) marshal the evidence in support of her claims and properly develop those claims prior to the hearing; (ii) cross-examine Bayles and other witnesses; and (iii) present arguments at the hearing based on that evidence. Bayles' signed Succession Agreement is an undeniably critical piece of evidence that had been subpoenaed in the course of discovery, but was first produced during closing argument. Notwithstanding that,

the Panel only afforded counsel for each party five minutes to make additional legal argument. That is hardly sufficient to afford Tara the due process rights to which she is entitled.[3]

The cases cited by Respondents do not compel a contrary conclusion because those cases did not involve a situation where, like here, Petitioner should have received the evidence of the fraud/misconduct long before the hearing pursuant to a properly served subpoena (Ex. N to Mov. Mem.). *See Karppinen v. Karl Kiefer Machine Co.*, 187 F.2d 32, 35 (2d Cir. 1951), *Odeon Capital Grp., LLC v. Ackerman,* 864 F.3d 191, 196 (2d Cir. 2017), and *Beljakovic v. Melohn Props. Inc.*, No. 04-cv-3694 (JMF), 2012 WL 5429438, at *12 (S.D.N.Y. Nov. 7, 2012). This case stands on its own because the fraud/misconduct was revealed to Petitioner during closing argument after the evidentiary portion of the hearing had closed. Petitioner did not have any, let alone ample, time to elicit any evidence related to Bayles' critically relevant Succession Agreement.

*Beljakovic,* a case cited by Respondents, actually supports Petitioner. In *Beljakovic,* the Court denied vacatur on the grounds that the petitioner in that case had "ample opportunity to present" the fraud to the arbitration panel. No. 04-cv-3694 (JMF), 2012 WL 5429438, at *12 (S.D.N.Y. Nov. 7, 2012). Here, the Panel's "remedy" for Morgan Stanley's failure to comply with a discovery subpoena until closing argument and Bayles' related false testimony was limited to accepting the document in evidence and offering Petitioner some additional legal argument about the document. Although Bayles' signed Succession Agreement is plainly material to Tara's claims for breach of duty and negligent misrepresentation (*see infra*, at Part

[3] Respondents falsely claim that Tara misled this Court by stating that the Panel became aware of the two newly-produced agreements only after the hearing had closed. Resp. Mem. at 19-20. Tara properly recited to this Court that Paul's Succession Agreement was produced on day three of the hearing ("[a]fter numerous calls and emails, on day three of the hearing, MS produced Paul's FFAP Commitment Agreement, executed on July 31, 2013." Pet. Mov. Mem. at 11) but Bayles' agreement, the most relevant agreement, was produced during the course of Tara's closing argument and revealed to the Panel after the evidentiary portion of the hearing had closed.

II.d.), the Panel plainly had made up its mind. In so doing, Tara was denied a fair hearing. *Supra*, at 6.

**b. Respondents cannot shield themselves by casting blame exclusively on Morgan Stanley.**[4]

Respondents also argue that they bear no responsibility for Morgan Stanley's failure to produce the Succession Agreements timely when they were subpoenaed. *See* Resp. Mem. at 20-21. However, having signed the Succession Agreement, Bayles was on actual notice that it existed. Under the circumstances, Bayles cannot disclaim responsibility under the implausible proposition that he simply forgot the central document. Failing to speak up and produce his signed Succession Agreement after Morgan Stanley failed to produce it in response to a chair-issued subpoena is tantamount to fraud or misconduct, as is the rendering of his false testimony. And, on at least constructive notice that Bayles had signed a Succession Agreement, the fact is that Respondent RBC elicited false testimony from him.

**c. Clear and convincing evidence exists that Bayles committed perjury.**

Respondents next argue that Bayles did not commit perjury; he was just "unaware" of his signed Succession Agreement. *See* Resp. Mem. at 22-23. Respondents' claim is a stretch. Bayles' recollection, even if fragile, should have been refreshed when shown identical agreement signed by his former partner, Paul Roche. *See* Pet. Mov. Mem. at 13. Not only that, but after Paul's agreement was produced, Bayles and his counsel went out of their way to emphasize that Bayles himself had never signed an agreement at Morgan Stanley. *See id.* at 13-14. Such brazenness does not evidence a failure to remember but rather a deliberate effort to mislead the Panel.

[4] Respondents refer to Morgan Stanley's production as "late." Resp. Mem. at 20. "Late" hardly accurately characterizes a production during the course of Petitioner's closing argument on November 4, 2021, in response to a subpoena dated April 12, 2021.

The conclusion that Bayles knowingly rendered false testimony becomes even clearer with more context. Bayles was a financial advisor who, by his own admission, engaged in financial planning. He received an income stream from John O'Connor's Succession Agreement at Morgan Stanley. He managed the payments to Tara on account of O'Connor's Succession Agreement. His partner Paul signed a Succession Agreement. He himself signed a Succession Agreement. And with all that, he nevertheless testified at the hearing that succession agreements were not in his mind when he was advising Tara. Bayles' false testimony contributed to a fundamentally flawed arbitration proceeding.

The cases cited by Respondents do not compel a contrary conclusion. Respondents cite *Schlesinger* for the proposition that mere confusion, mistake, a faulty memory, etc. does not constitute perjury. *See* Resp. Mem. at 21. But the *Schlesinger* Court also emphasized that a "witness commits perjury by willfully giving false testimony concerning a material matter." *U.S. v. Schlesinger*, 438 F.Supp.2d 76, 106 (S.D.N.Y. 2006) (internal citation omitted). As addressed above and in Petitioner's Mov. Mem., the evidence is that Bayles intentionally misled the Panel because he thought he could safely give false testimony because of Morgan Stanley's failure to comply with the subpoena. Respondents took advantage of the non-production. Bayles did not merely answer one question falsely. He repeatedly testified falsely that he had not signed a succession agreement at Morgan Stanley, nor were succession agreements in his mind. Ex. A at 730:6-10; 733:22-734:12; 738:12-20; 742:12-18; 775:11-12; 806:20-807:21.

**d. <u>The fraud or misconduct was material to Tara's claims.</u>**

Respondents argue that the fraud or misconduct was immaterial because the existence of two Succession Agreements at Morgan Stanley do not bear on "the core issue in the case." "What Petitioner evidently hoped to prove" was that RBC, Roche, and Bayles had signed a

Succession Agreement. *See* Resp. Mem. at 24. In framing the issue so narrowly, Respondents once again completely ignore Tara's claims that either Bayles breached his duty by not advising her to put a succession agreement in place or he negligently misrepresented that she had one in place. *Supra*, at Part I. Notably, Bayles' principal defense to that claim was that succession agreements were simply not in his mind and that he "never in twenty-plus years of constructing financial plans entered succession agreement payments into any client plan." Pet. Mov. Mem. at 12. The fact that he signed a Succession Agreement at Morgan Stanley is plainly material to his defense that he never even thought of succession agreements as part of his financial planning duties, as well as to Tara's claims for breach of duty and negligent misrepresentation.

**III. <u>This Court should deny Respondents' request for attorneys' fees</u>**

Respondents argue that Tara should pay Respondents' legal fees because she ignored decades of binding precedent in connection with the justiciability of FINRA Rule 2010. *See* Resp. Mem. at 29. As discussed above, Respondents' argument ignores the fact that Petitioner always pursued claims for breach of common law duty, in addition to Respondents' duty to "observe high standards of commercial honor and just and equitable principles of trade" codified at FINRA Rule 2010. Moreover, even if she hadn't separately pled breach of common law duty, Respondents' argument would still fail because it is a "dispute, claim, or controversy" that is adjudicated in FINRA's dispute resolution forum; claimants are not required to state a "cause of action." FINRA's Arbitration Claim Filing Guide, 3 (January 2017).

Respondents also argue that Tara ignores the precedent establishing that her fraud or misconduct claim is barred because the Panel found out about it during the hearing. Resp. Mem. at 29-30. As discussed above, allowing each side's counsel to make a five-minute legal argument cannot remedy the obvious prejudice that Petitioner suffered as a result of being deprived of the

subpoenaed Succession Agreements to prepare for and to conduct the hearing, including her right to, among other things, effectively cross-examine Bayles with the very document that he testified did not exist. The rest of Respondents' claimed misrepresentations and half-truths are dealt with above. The only misconduct that conceivably merits an award of attorneys' fees lies with Respondents.

**CONCLUSION**

WHEREFORE, Petitioner respectfully requests that her petition to vacate the Award be granted and that Respondents' cross-motion to confirm be denied, and all of the foregoing together with such other and further relief as to this Court appears just and proper.

Dated: New York, New York
April 6, 2022

KRAUS & ZUCHLEWSKI LLP

/s/ *Robert Kraus*
Robert Kraus, Esq.
Jonathan Sclar, Esq.
60 E 42nd Street
Suite 2534
New York, New York 10165
(212) 869-4646
*Attorneys for Claimant*

TO:

George Sullivan, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200
*Attorneys for Respondents*