ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12|19|22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X
     TARA O'CONNOR-ROCHE EXECUTOR
     of ESTATE of PAUL ROCHE III, and
     INDIVUDALLY,

               Plaintiff,           22 Civ. 1467 (LLS)

     - against -            OPINION &
                                   ORDER
     RBC CAPITAL MARKETS, LLC, ET AL.,

               Defendants.
- - - - - - - - - - - - - - - - - - - -X
     This case arises out of a Financial Industry Regulatory

Authority ("FINRA") arbitration filed by Petitioner Tara

O'Conner-Roche as Executor of the Estate of Paul Roche III, and

Individually ("O'Connor-Roche") against Respondents, RBC Capital

Markets, LLC ("RBC") and Christopher Bayles, an RBC financial

advisor, alleging claims of negligence, breach of fiduciary duty

and partnership, and breach of contract.

     After four days of hearings, the FINRA arbitration panel

(the "Panel") issued an award denying O'Connor-Roche's claims in

their entirety (the "Award"). O'Connor-Roche subsequently

petitions this Court to vacate the Award arguing the Panel

misapplied the law and overlooked perjured testimony that was

offered during the arbitration. Respondents cross-move to

confirm the award. Because O'Connor-Roche has not identified any

manifest disregard of the law or corruption, fraud, or undue

means that would merit vacatur, the petition to vacate is denied, and the cross-motion to affirm is granted.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and recounts only what is necessary for the resolution of the pending matter.

Christopher Bayles is currently a financial planner at RBC. He worked in partnership with Paul Roche, III sharing their book of business on a 50/50 basis. Dkt. No 13 (Res. Opp.) at 4.

In 2012, the partners were working at Morgan Stanley. Dkt. No. 1 Ex. A-21 at 4-5. That year, Roche took over John O'Connor's book of business following his death. Id. at 5. Roche's new clients included the widowed Tara O'Connor, whose estate then consisted of money flowing from a Formal Financial Advisor Agreement ("FFAP Agreement") executed between Morgan Stanley and John O'Connor. Id. at 4-5. The FFAP Agreement granted Tara a percentage of O'Connor's book of business for five years following his passing.[1] Id. at 5.

In 2013, Roche and O'Connor became engaged. Id. at 6. Subsequently, to alleviate the conflict of interest for Roche to act as O'Connor's advisor and husband, Bayles became O'Connor's financial planner from 2013 onward, although O'Connor still

---

[1] She received payments until May 2017. Dkt. No. 1 Ex. A-21 at 6.

questioned the existence of a conflict of interest existed. Id.
Throughout their working relationship and in connection with his
financial planning advice, Tara alleges that Bayles repeatedly
told her that there was an agreement in place, like the FFAP
Agreement, that would protect Tara in the event of Roche's death
or disability. Id. at 7.

   In August 2017, Roche and Bayles moved their book of
business to RBC, including Tara's accounts. Id. As part of
Roche's recruitment package, he received a lump-sum payment from
RBC in 2017, structured as a promissory note forgivable over a
nine-year period of continued employment or in event of his
death or disability. Dkt. No 13 at 4. In April 2019, Roche
tragically passed away. Id. RBC forgave the remaining loan
amount. Id.  Even so, Tara inquired about the existence of an
FFAP-like Agreement that would allow her to receive succession
payments on Roche's book of business. Dkt. No. 1 Ex. A-21 at 8.
Bayles only informed Tara in July 2019 that no payments would be
forthcoming because no succession agreement was in place between
Roche and RBC. Id. Bayles allegedly knew of that fact since
before May. Id.

   The proceeding claims arise from RBC's non-payment to the
Roche estate monies allegedly owed to it as a successor in
interest of Roche's book of business and from Bayles' financial
advisement.

Procedural History

On November 13, 2020, Tara initiated an arbitration proceeding before FINRA against RBC and Bayles.[2] Dkt. No 13 at 6. She asserted eleven causes of action: negligent misrepresentation, breach of a succession agreement, bonus agreement, and customer account agreement, breach of fiduciary duty, breach of partnership agreement, negligent failure to supervise, respondeat superior, detrimental reliance, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. Dkt. No. 1 Ex. A-13 (Fourth Amended Statement of Claim).

In the course of discovery, respondents served an order for production (the FINRA equivalent of a subpoena) upon Morgan Stanley, calling for the production of all succession-type agreements between Morgan Stanley and either Mr. O'Connor, Roche, or Bayles. Dkt. No. 13 at 9; Dkt. No. 1 Ex. A-21 at 9. On May 27, 2021, and June 3, 2021, Morgan Stanley complied with RBC's subpoena by producing O'Connor's FFAP Commitment Agreement, O'Connor FFAP Agreement signed by Tara as his Executor, and three memoranda enabling Paul and Bayles to participate in O'Connor's book of business. Dkt. No. 1 Ex. A-21

---

[2] On July 23, 2020, Tara filed a previous arbitration proceeding before FINRA based on the same facts here, but FINRA declined jurisdiction and the case was closed. Dkt. No 13 at 6.

at 10; id. Ex. A-16. At that time, Morgan Stanley did not

produce two FFAP Commitment Agreements, one signed by Roche and

the other by Bayles. Id. Ex. A-3; id. Ex. A-5.

On October 12, 2021, Tara submitted her prehearing

statement to the FINRA panel, in which she alleged for the first

time that Bayles had violated FINRA Rule 2010, a generic good-

government rule requiring that "[a] member, in the conduct of

its business, shall observe high standards of commercial honor

and just and equitable principles of trade." Dkt. No. 15 Ex 11

(Pet. Prehearing Statement) at 4.

The arbitration hearing commenced on November 1, 2021.

Before the Panel, Tara continued to press the claim that she was

entitled to compensation-based payments under a succession

agreement that RBC and Roche has supposedly entered, but no

agreement was produced or shown to have ever existed. Dkt. No.

13 at 7. In fact, the Panel was presented with evidence that

Roche had not executed such an agreement with RBC. Tr. 331:19-

334:17; 632:15-634:5; 694:19-695:16. Bayles testified in that

vein, stating that to his knowledge he did not enter into a

succession agreement with RBC or Morgan Stanley and that he did

not discuss a succession plan or agreement with Roche or Tara.

Tr. 730:6-10; Tr. 733:22-734:12; Tr. 736:4-5, 742:12-18.

On the third day of the hearing, Morgan Stanley produced a

FFAP Commitment Agreement executed between itself and Roche on

July 31, 2013. Dkt. No. 1 Ex. A-21 at 11. On the last day of the hearing, Morgan Stanley produced a FFAP Commitment Agreement executed on June 8, 2012 by itself and Bayles. Id. at 12. Both agreements were received into evidence. Dkt. No. 13 at 9. Tara argued that the belatedly produced documents indicated that Bayles had falsely testified. Tr. 917:10-23; 925:15-927:7.

Three weeks later, on November 22, 2021, the Panel denied all of Tara's claims without any reasoning. Dkt. No. 1 Ex. A-18. On February 17, 2022, Tara petitioned the Supreme Court of the State of New York to vacate the arbitration award. Id. Ex A. Respondents removed the case to this Court and filed a cross-motion to confirm the arbitration award. Dkt. No. 1; id. at 12.

### DISCUSSION

"A court's review of an arbitration award is severely limited." United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC, 804 F.3d 270, 274-75 (2d Cir. 2015). District courts afford strong deference to the arbitral process and must enforce a resulting award so long as "there is a barely colorable justification for the outcome reached." Landy Michaels Realty Corp. v. Loc. 32B-32J, Serv. Emps. Int'l Union, AFL-CIO, 954 F.2d 794, 797 (2d Cir. 1992); Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 92 (2d Cir. 2008).

Nevertheless, under the Federal Arbitration Act,[3] a court may vacate an arbitration award if (1) the award was procured by corruption, fraud, or undue means, 9 U.S.C. § 10(a), or (2) if the arbitrator manifestly disregards the law, Seneca Nation of Indians v. New York, 988 F.3d 618, 625 (2d Cir. 2021).

I.   Manifest Disregard of the Law

A litigant seeking to vacate an arbitration award based on manifest disregard of the law bears a "heavy burden." See, e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010). She must show (i) "that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it" and (ii) that the disregarded legal principle was "well defined, explicit, and clearly applicable." Seneca Nation of Indians, 988 F.3d at 626 (internal quotation marks, citation, and alterations omitted). Such a showing will only be achieved "in those exceedingly rare instances where some egregious impropriety on

---

[3] Although O'Connor-Roche seeks vacatur under NY CPLR § 7511, the Federal Arbitration Act governs this motion because the underlying matters, breach of contract, negligent misrepresentation, and other equitable claims, affect interstate commerce. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (holding the FAA applies to all transactions "affecting commerce—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power").

the part of the arbitrator is apparent," T.Co Metals, 592 F.3d
at 339, like when the arbitrator "effectively dispenses his own
brand of industrial justice," Weiss v. Sallie Mae, Inc., 939
F.3d 105, 109 (2d Cir. 2019), or when the error is "obvious and
capable of being readily and instantly perceived by the average
person qualified to serve as an arbitrator," Merrill Lynch,
Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d
Cir. 1986).

O'Connor-Roche argues that the Panel manifestly disregarded
the law when it rejected her claims of breach of (1) FINRA Rule
2010, (2) the common law duty of good faith and fair dealing and
for negligent misrepresentation.

1. Claim for Breach of FINRA Rule 2010

FINRA Rule 2010 provides that "a member, in the conduct of
its business, shall observe high standards of commercial honor
and just and equitable principles of trade." FINRA Rule 2010.
O'Connor-Roche argues that respondents breached the duty to act
with "high commercial honor" by (1) failing to advise O'Connor-
Roche that she should sign a succession agreement, (2) by
allowing Bayles to act as O'Connor-Roche's financial planner,
and (3) by withholding from her the fact that no succession
agreement existed, even though she repeatedly inquired about it.
Dkt. No. 1 Ex. A-21 at 14.

O'Connor-Roche did not plead a claim for breach of FINRA Rule 2010 in any of her four amended Statements of the Claim to the FINRA Dispute Resolution panel. Dkt. No. 13 (citing July 2020 SOC; Oct. 2020 ASOC; Nov. 2020 SOC; Feb. 2021 ASOC.) Rather, it was mentioned for the first time in her Pre-Hearing Statement where it was incorporated as part of a claim for "Negligent Misrepresentation/ Breach of the Implied Covenant of Good Faith and Fair Dealing and FINRA Rule 2010." See Dkt. No. 15 Ex. 11 at 4 ("Further, Bayles violated FINRA Rule 2010 by not observing 'high standards of commercial honor and just and equitable principled [sic] of trade."). The Rule was not mentioned again until O'Connor-Roche's closing argument where it was given a two-sentence conclusory review. Tr. 914:5-8 ("Rule 2010 applies to members the obligation to act with commercial honor. This is not commercial honor, what happened here.").

While the Court makes no judgment on the parties' dispute over whether that was sufficient to show that the panel knew of FINRA Rule 2010, it is clear that it is insufficient to show that FINRA Rule 2010 was clearly applicable to the case.  When, as here, "arbitrators decline to provide an explanation for their decision, a reviewing court can only infer from the facts of the case whether 'the arbitrator[s] appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it.'" Willemijn

Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12–13 (2d Cir. 1997) (alteration in original) (citation omitted). In such a case, the Court must confirm the panel's decision if "even a barely colorable justification for the outcome reached" can be inferred from the facts of the case. Id.

There is justification for the panel's denial of O'Connor-Roche's FINRA Rule 2010 claim: there is no private right to action under FINRA Rule 2010. See Colonial Realty Corp. v. Bache & Co., 358 F.2d 178, 180 (2d Cir. 1966) (rejecting private claim under the predecessor to FINRA Rule 2010., a NASD rule "requir[ing] members to 'observe high standards of commercial honor and just and equitable principles of trade'"); Landow v. Wachovia Sec., LLC, 966 F. Supp. 2d 106, 130 (E.D.N.Y. 2013) (NASD Rule 2210, imposing a requirement to abide by high standards of commercial honor and just and equitable principles of trade, fails to state a claim for relief because such rules "do not confer a private right of action."); Brady v. Calyon Securities (USA), 406 F. Supp. 2d 307, 312 (S.D.N.Y.2005). The Second Circuit squarely refused to recognize a private claim, characterizing the rule as "something of a catch-all" that "preserves power to discipline members for a wide variety of misconduct, including merely unethical behavior which Congress could well have not intended to give rise to a legal claim." Colonial Realty Corp., 358 F.2d at 182.

O'Connor-Roche argues that the lack of a private right of action under FINRA Rule 2010 is not fatal to her claim because the FINRA dispute resolution forum does not require a private right of action. Dkt. No. 22 (Pet. Reply) at 4-5. But the lack of a private right of action does not thwart her claim on the grounds that the claim should not have been brought. It is instead fatal to her position because it means that there is no law either compelling the conclusion that she should have prevailed in the arbitration or showing that the circumstances here rise to the level of the Panel "willfully flout[ing] the governing law by refusing to apply it." See Seneca Nation of Indians, 988 F.3d at 626.

Because there is no private right of action, O'Connor-Roche does not identify a governing legal principle that was willfully flouted and would have controlled the outcome of the case in her favor. Accordingly, the Panel did not manifestly disregard the law.

   2. Negligent Misrepresentation and Breach of Common Law Duty
      of Good Faith and Fair Dealing
   Before this Court, O'Connor-Roche argues for the first time in her Reply Memorandum that the Panel also manifestly disregarded her claims for negligent misrepresentation and for breach of the common law duty of good faith and fair dealing. Dkt. No. 22 (Pet. Reply) at 4-5. She asserts the panel necessarily disregarded the law when Bayles' Succession

Commitment Agreement with Morgan Stanley was "finally produced
and admitted in evidence" because there were "only two possible
conclusions to be drawn by the panel" from it and the
corresponding Bayles' testimony that "succession agreements were
never in his mind and he never told Tara that one was in place
at RBC." Id. at 5.  It could have credited the testimony and
accepted that Bayles knew of the importance of Succession
Agreements but breached his fiduciary duty by not advising her
to have one, or it could have rejected the testimony and found
that "he had told Tara that she had an agreement in place at
RBC." Id.

     Procedural deficiencies aside, O'Connor-Roche fails to make
the requisite showing that the Panel willfully flouted the
common law by refusing to apply it. O'Connor-Roche's contention
that only two conclusions are plausible is too narrow. The Panel
could have credited Bayles' testimony that he did not tell Tara
a succession agreement was in place at RBC and found that
Bayles' succession commitment agreement with Morgan Stanley,
executed years prior and for himself as a financial advisor,
does not show he is required to advise his clients on
implementing one, especially given his testimony that he "never
in twenty-plus years of constructing financial plans entered
succession agreement payments into any client plan." Tr. 738:12-

20.  Applying the law to these facts, there is justification for the Panel finding there was no breach or misrepresentation.

O'Connor-Roche fails to carry the heavy burden of showing that the Panel manifestly disregarded the laws.

II.  Procured by Corruption, Fraud, or Misconduct

An award may be vacated if it was procured by corruption, fraud, or undue means. 9 U.S.C. § 10(a)(1). Obtaining an award by perjured testimony constitutes fraud. See Odeon Cap. Grp. LLC v. Ackerman, 864 F.3d 191, 196 (2d Cir. 2017).

O'Connor-Roche's fraud argument has two related components: that Morgan Stanley, a non-party, produced succession commitment agreements—one it had executed with Bayles and the other with Roche-late in the proceedings and those agreements allegedly demonstrate that Bayles committed perjury. Specifically, O'Connor-Roche argues that Bayles committed perjury when testifying that to his "knowledge, there were no other commitment agreements," Tr. 730:6-10, that he never discussed a succession plan with Roche, Tr. 733:22-734:12., that succession agreements were not on his mind, Tr. 736:4-5; 742:12-18, and that he had not entered into one, Tr. 806:20-807:21.

A petitioner seeking to vacate an award on the ground of fraud must prove that "(1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the

- 13 -

award issuing; and (3) the fraud materially related to an issue
in the arbitration." Odeon Cap. Grp. LLC, 864 F.3d at 196.  "The
purpose of requiring fraud to be newly discovered before
vacating an arbitration award on that ground is to avoid
reexamination, by the courts, of credibility matters which
either could have been or were in fact called into question
during the course of the arbitration proceedings." Beljakovic v.
Melohn Properties, Inc., No. 04-cv-3694, 2012 WL 5429438, at *4
(S.D.N.Y. Nov. 7, 2012), aff'd, 542 F. App'x 72 (2d Cir. 2013)
(summary order).

O'Connor-Roche had the opportunity to argue before the
Panel that Bayles was committing perjury. The documents were
produced, albeit late, but were received into evidence by the
Panel. The Panel gave either side time to make legal arguments
regarding the import of the documents.  Tr. 764:25-766:20;
916:4-22; 917:10-23; 922:15-925:11; 925:15-927:7. Accordingly,
O'Connor-Roche raised before the Panel the issue of Morgan
Stanley's tardy production and argued at length that the
documents show that Bayles' testimony was false. Tr. 891:7-
892:5; 917:10-23; 925:15-927:7. O'Connor-Roche complains to this
Court that the five additional minutes granted by the Panel to
argue the import of the documents were insufficient. Dkt. No. 22
at 6-7. But this argument is unpersuasive because it does not
quell the central flaw of O'Connor-Roche's fraud claim and

instead amplifies the fact that the Panel was aware of the
alleged fraud.

Because O'Connor-Roche raised the fraud issue before the
Panel and she does not assert any new evidence or argument
before this Court, she fails to state a claim of fraud by
perjury. See, e.g., Beljakovic, 2012 WL 5429438, at *4 (denying
vacatur for alleged fraud where petitioner "had ample
opportunity to present that argument to the arbitrator"); Hakala
v. Deutsche Bank AG, No. 01-cv-3366, 2004 WL 1057788, at *3
(S.D.N.Y. May 11, 2004) ("[Petitioner] had the opportunity to
present to the arbitrators evidence of this alleged fraudulent
behavior of respondents.... Accordingly, [petitioner] may not
now seek review of those issues in this court.").

O'Connor-Roche also does not show that Morgan Stanley's
late production of the agreements amounts to respondents
engaging in fraudulent activity.  The evidence shows that Morgan
Stanley, a non-party, was solely responsible for the late
production of the agreements. O'Connor-Roche argues that Bayles,
as the signatory to one agreement, was responsible for producing
it but she offers no evidence that he was subpoenaed for it or
that the document was still in his control. Further, there is no
evidence that respondents colluded with Morgan Stanley to
suppress the evidence.

O'Connor-Roche fails to state a claim for fraud or for manifest disregard of the law. Accordingly, her motion to vacate the Award is denied.

III. Motion to Confirm the Arbitration Award

"Upon the denial of a motion for vacatur, the Court must confirm an arbitration award." Beljakovic, 2012 WL 5429438, at *5; see also 9 U.S.C. § 9 ("[T]he court must grant [an order seeking confirmation] unless the award is vacated, modified, or corrected."). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citations omitted). As the Court finds no grounds on which the Award should be vacated, respondents' motion to confirm the Award is granted.

IV. Attorney's Fees

Respondents urge the Court to order O'Connor-Roche pay attorney's fees on the grounds that her petition before this Court had no colorable basis and was brought in bad faith.

"A court may, pursuant to its inherent equitable powers, assess attorneys' fees and costs when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." First

- 16 -

<u>Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food
Emps. Union Loc. 338</u>, 118 F.3d 892, 898 (2d Cir. 1997)
(quotation omitted).  As applied to suits for the confirmation
and enforcement of arbitration awards, "the guiding principle
has been that when a challenger refuses to abide by an
arbitrator's decision without justification, attorney's fees
and costs may properly be awarded." <u>Commodities & Mins. Enter.
Ltd. v. CVG Ferrominera Orinoco, C.A.</u>, 49 F.4th 802, 819-20 (2d
Cir. 2022).

Here, although the Court ultimately disagrees with
O'Connor-Roche's arguments, those arguments were not made
without justification and she did not act "in bad faith,
vexatiously, wantonly, or for oppressive reasons." See <u>First
Nat. Supermarkets, Inc.</u>, 118 F.3d at 898.  In particular,
O'Connor-Roche's arguments were not limited to FINRA Rule 2010
but include the misapplication of the common law. Accordingly,
the motion to award respondents' attorney's fees is denied.

**CONCLUSION**

For the reasons discussed above, O'Connor-Roche's petition
to vacate the Award is denied. Dkt. No. 1. Respondents' cross-
petition to confirm the Award is granted but their motion for
attorney's fees is denied. Dkt. No. 12.

So Ordered.

Dated:     New York, New York
           December 19, 2022

                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                        U.S.D.J.